Lewis Gordon on behalf of the petitioner Minraj Neupane I would like to reserve three minutes for rebuttal. Mr. Neupane is a Nepalese asylum applicant and he's seeking review of the Board of Immigration Appeals affirmation of the immigration judge's denial. Now it's crucial for me to point out to the immigration judge who wrote the decision in this case was not the same judge who heard the case and conducted the hearing that's noted on page 91 in the record that judge after Judge Yergin retired he was replaced and it's crucial in this case because the presentation of Mr. Neupane's passport which was given to the government attorney in court should not have been challenged by the new judge writing the decision after Judge Yergin retired. I want to point out that in the transcript of the hearing the government attorney the trial attorney said after examining Mr. Neupane on page 222 that though there were other stamps in the passport they weren't relevant to her questioning and she didn't have time to copy the additional page that had marks on it but more importantly on page 232 she said that she did after cross-examining Mr. Neupane she didn't have problems with his credibility and was more concerned with the one-year issue and whether if the department waived cross-examination would Mr. Neupane accept withholding of removal. At the end of the hearing Judge Yergin who heard the case said to the government attorney your only problem with credibility is the LOHO issue regarding returning to the country of persecution and the government attorney said correct and Judge Yergin asked her again and she and she confirmed that and then the board said it wasn't basing its decision on the LOHO reasoning by the IJ so there really should be no credibility issue before this court. Then when the board decided the case he said they said he was questioned regarding the stamps for his passport and the lack of any stamps showing his entry or exit into Dubai at that time but in fact there's no evidence that there was a lack of stamps. There's no evidence that there was a lack of stamps and also at page 743 in the record there's another letter from a supporting witness that the person who took him to Dubai mentions Dubai in there mentions that in there and so there was no evidence and the and the government's attorney seemed satisfied with the passport and the judge never said to him do you have evidence in the passport that you went to Dubai. But the BIA said they did ask him that but they didn't ask him that. Correct. So my understanding was that the pages were missing that showed the trip to Dubai is that not correct? They were not put into the record is what happened. The passport was shown. And what about his trip to Iran that was missing too? The government attorney copied those pages and put that into the passport. The line of questioning that the government's attorney had done was was why didn't you mention in your direct testimony that you had gone to and she asked him about it and he noted that he had gone to Kish Island in Iran and she copied those pages and put them in the record. There never was an issue about whether he had gone to Dubai in this questioning. That only came up subsequently when the second IJ reviewing the record raised that issue. And then apparently that you were raising we're discussing this issue a second ago but he after his persecution he did return to Nepal. Yes your honor but the board says that they are not questioning his credibility based on that. That's on paper in the first paper the board decision. The board specifically didn't rely on that. So the board relied only on this thing about the passport. And my understanding what happened with that is that he submitted two pages of passport just to show the stamps of him coming into the United States. And then the United States the government asked for the passport took and then it submitted and explained that it submitted only the pages showing he traveled to Iran. He said there were others that showed other stamps but they they weren't bothering with that. So when the board said that he omitted the pages showing his travel to Iran he didn't omit them he just only submitted he submitted pages only for the purposes of showing he came to United States. Is that right? That's correct your honor. So but then so then the other piece and I guess the piece that you need to talk about the other thing the board relied on is this is about where his sister got the letter got a letter and I was fairly confused about that because in the transcript when he goes when he first goes through where he got various documents he says as to one document which sounds like this document but I don't know if it is that he he says his sort of more generically that she went and got everything in his house and he says she got this letter so I couldn't tell there was more than one letter for Tarendal or what that was about. So your honor there's many documents in this case that he submitted in fact it's an extremely well documented case. The proprietor of the company submitted a letter the village development committee person submitted a letter his uncle submitted a letter the person he went for he went to dinner with where he was attacked submitted a look there were IDs that were submitted in a poly Congress record his father's death certificate the hospital record so he said most of those documents were at the house and by his sister and he was in the context of the hearing he may have been confused by the questioning if we look at page 245 the immigration judge had said did you get this before you left Nepal and he says no later then he says he's not sure and then the judge is pressuring him finally so before you left Nepal and then he says I believe so so the reason this is important is because under Shrestha and the totality of circumstances whether the sister sent them the document before or after whether he had the document before the sister got it afterwards is kind of trivial in the scope of all the documentation that he got and as we noted in the in the brief nobody questioned whether he was in the time room doll or not was a question of the question was about whether the sister got the document before or after he left because as I'm hearing you now and what I've read you're saying that the order is completely bogus it's been entered because the five facts that were argued are nowhere near what the order says is that your position well your honor I I don't focus is a very strong turn and I used word because that your argument is that the order your honor this focus I believe it's it's not it's not accurate and the reason it's not accurate is because the judge who was reviewing the key record of proceedings wasn't there at the proceedings and so there seems to me that given all the emphasis on demeanor and I mean the IJ who's there and deferring to him if this site each IJ wasn't there why should we defer to him at all well I I don't believe under substantial evidence you realize that and I've never seen it before it's extremely strange so I'm sorry was it the IJ who the IJ who heard the evidence is not the IJ who wrote the IJ order correct and on page 91 it says that he was replaced and and it seems to me that when we look through all this all this the transcript and you look at what went on they're two separate two separate people and they don't match so what should we do about that I believe that this case should be remanded your honor for a new hearing or what well there's a problem in that the board never addressed the one-year issue or or it addressed the one-year issue but it didn't address a number of issues in the case so if you could remand for a new hearing and you can't grant I don't believe because you can only grant on credibility they still have to evaluate the other issues but one oh eight of the transcript and this was before the cross-examination as I understand that he's going through all the documents where he got it got them he says he goes through a bunch of them and says my sister got him from the house and then she says this is a exhibit to see page five a letter by Nepali Congress District Activity Committee no I don't know if that's the letter they were talking about later how did you come to have that document in the United States this was sent by my sister how did your sister obtain that document in Nepal my sister went to the office then said about my involvement in my support to the party and then they made it for me from the office which is consistent with what he said later when they asked him how come it said 2009 but I can't tell whether that's the same letter but at least just a one letter he said originally before anybody raised any issue is that right that's correct or is it some other letter well there's even the power and dollars is a subgroup of the Nepali Congress so and I believe that later on it could be could I ask just one quick question yes it's helpful did you make this same argument in your briefs I mean I I'm recalling what I read and this is did you make this argument in your briefs below I mean in your brief does no your honor I didn't write the brief okay thank you yeah I thank you Marcia morning your honors may please the court recess mercy of the office in respondent there's one primary issue before the court today whether the record compels reversal of the agency's adverse credibility of finding your honors as argued in the respondents brief the record reflects that mr. Newman's testimony was internally consistent and inconsistent with his submitted supporting documents with regard isn't the board wrong when it lack of any stamps showing his entry or exit first of all was he asked about the lack of any stamps showing his entry or exit into Dubai at that time what he was asked about was he was the lack of submitting any other pages of his passport and that's why I don't even think he was asked about that you know he was your honor if I may so so he's asked about this so he initially claims in his initial testimony he only mentions Dubai he only says the mayor is scared me I went to my employer I went to Dubai on cross-examination so I'm sorry is it possible or even likely that he went to Iran while they're from Dubai well your honor the question is is whether or not he first of all didn't passport pages and second of all when he only mentioned Iran when he was confronted with additional passport pages no DHS council that's not true either what happened was they came in and she said you know is this your your current passport and she said what what what where when you have this passport where'd you go he said to buy in Iran and that was before anybody showed him any pages about Iran is that your honor if I may I'm fairly sure it happened so at the beginning of of the of the at the beginning of the hearing DHS council DHS council asked if there were any additional pages if he had a current passport didn't ask about additional pages but she did ask like I don't see on this passport in the record can I see it his opposing counsel said sure she gets the passport and she goes and makes she looks at it and she goes and gets additional copies of these additional pages she notices that there's some sort of discrepancy there and then during cross-examination she brings the DHS counsel says now sir I have your passport in front of me I believe your honor there are copies of certain pages of the passport to the record already exhibit I believe it's to see pages one two three and four and then she says sir the passport I'm holding up do you recognize this so she shows him the passport that she's looking at is this your passport and then she she goes on about the passport a little bit and then she goes on and then says where did you travel using the passport and then he says Qatar Nepal Qatar and then later on she eventually I'm sorry I I have to switch between this and the record so she eventually asked him so she's going on and she's asking him about Dubai and Qatar and so she has shown him the passport at that point and then finally on page 217 and 18 she says other than the trip that you've already told us about to Qatar and the trip to Dubai where else have you traveled with this passport and then he asked in this current task force and she says yes and then at that point he discloses in Dubai and Iran right but not why he showed him any pages right well she had just shown him the passport at least in the record what motive what is this relevant to anyway what motive does he have for well you're I'm sorry you're on your honor again as we argue in a brief the disclosure first of all this is not this is an inconsistency between the documents in the record and his testimony and which is and then she said I'd like to submit a few extra pages of the passport there's nothing previously submitted but he didn't admit anything because he didn't purport to be all he purported to be submitting at the beginning was the cover page and the page shows when he came to the United States nothing else right your honor when he if I may illustrate one reason that this is absolutely important so as we argue in our brief this is a significant detail because the impetus for him leaving and in his supporting documents he says he goes to Dubai because the mayor was attacking he says he stays in Dubai because mayor is attacking and he says he does not return to Nepal until the until he's told they haven't served the mayor's haven't searched for me for a while so I returned to Nepal however in his Iran in the pages that are shown by DHS counsel as we point out our brief if the visa stamps on the on the on the on the Iranian visas are to be believed his visa in Iran expires in January 2006 the exact date he chooses to go back to Nepal as he alleges because the mayor is no longer searching to him and in fact in his cross-examination testimony on pages 222 222 and page 223 there's a very interesting exchange there that why did you return to Nepal after you'd been in Iran DHS has counsel assets mr. new pain states he doesn't stay oh then mail is there no longer looking for me what he actually states is I had gone there from on behalf of the famous human resources the company that you work there for to source for that new jobs and we did not find any new jobs that is why I went back to Nepal he doesn't say I no longer I I had heard the mail isn't looking for me he says that for what reason the jobs dried up in Iran or there were no other new jobs there and that's why he returns to Nepal on page 128 of the transcript and your opponent mentioned this the DHA lawyer says there are a couple of the pages on the passport that had stamps on them but they were not relevant to my questioning it didn't have time to cover the additional pages so is there any evidence that he didn't go to Dubai and that the word stamp that the word stamps in the passport for Dubai your honor I think the relevant question here is whether or not he disclosed that you said the BIA said that he omitted that he didn't go to Dubai and that's and it was asked about it he wasn't asked about it and there's no evidence he didn't go is that right I believe that the the board's language regarding this lack of any stamp showing the response I'm sorry that's not true right there was no evidence that there was a lack of your honor I'm sorry in your honor the DHS disclosed that they weren't submitting any other of the pages of the passport at that point the judge at that point stated to petitioners counsel do you want to submit anything else from the passport petitioners counsel did not at that point DHS on contrary to petitioners counsel's allegation or or argument that he's just making now DHS did not concede the idea of credibility at this point DHS counsel simply said if your honor wants to address anything else that's fine they're the the way that the board states it is the respondent did not state that or the petitioner here did not state that he traveled anywhere else during this period it shows that he entered Iran in November 2005 was granted numerous these extensions until January 2006 so the counsel counsel what is the overarching point that you're trying to make because you seem to be quibbling a lot and what is your overarching point why is this adverse credibility decision that's based in part on the trips to Dubai in Iran why is that valid your honor there are two instances of inconsistencies here that are essentially undisputed I would respectfully disagree that there's any mischaracterization of the record by the agency here the the agency clearly points out that he did not mention until confronted on cross-examination his trip to Iran and second of all that there was inconsistencies relating to the the obtaining of his letter regarding the Tyron doll and on that basis under the circumstances under the standards of stress that the immigration judge can view inconsistencies between testimony and record evidence that the pre ID or post ID this is a post real ID act case and under that circumstances under stress the agency here can look at inconsistencies even if they are minor inconsistencies and still fine let's take his testimony is true what do we make of the change country conditions in this record I'm sorry your honor I would have to be speculating about that simply because the agency didn't reach that question of course the immigration judge did discuss it regarding just simply country conditions for the Convention Against Torture claim but he did not discuss it or the agency didn't reach that question ultimately for the question of or the board didn't the board only on adverse credibility what about the board on page two said finally we find no reason to disturb the immigration judges decision on cat based on consideration of change country conditions in Nepal affecting the respondents claim and these sites the IJ at 10 to 11 yeah as your honor as I I'm sorry I'm out of time but I'm would respond to your question your honor all I meant was that adverse credibility was the end-all be-all for asylum and holding of removal but yes for change country conditions conditions were discussed you've been talking over the judges the whole time it wasn't sorry look on page 10 of the IJ decision additionally the extensive country conditions evidence in the record rapidly changing Nepal and it goes through it and that's before the IJ gets to the Convention Against Torture your honor but the the board only upheld the adverse credibility for the asylum withholding but it upholds the can the Convention Against Torture based on country condition I won't your honor I'm never mind your time's up okay okay thank you yes your honor so I would respectfully have to disagree with Government Council on the trial attorney at the hearing conceding the credibility issue regarding the passport and the documents because the when the judge asked her at page 446 your only problem with credibility is loho trial attorney said correct now regarding the cat issue the government brief at page 46 says that mr. new pain doesn't dispute he wasn't the finding that he wasn't tortured that's not correct the board decision doesn't review that aspect it only reviews the country conditions and I know another thing that I did want to point out is that there is evidence of the malice joining the government I don't see how that makes the threat to mr. new pain any less the malice actually have more power probably after agreements than they did before so mr. new pain remains in great danger and of course the totality of circumstances on the credibility issue including all the documents in this very well documented case lead to conclusion that he was credible I believe that the board doesn't rely on those documents because right because the IJ the new IJ writing this decision didn't give the petitioner mr. new pain the opportunity to respond to those to those issues so therefore the board can uphold that and did you and your brief I don't remember contest the cat claim the board did with regard to the cat claim rely and change country conditions yes yes there it's addressed in the brief pages 26 to 29 essentially is didn't rely on and change country conditions with regard to asylum and withholding presumably because it could be different I guess on a switch burden and they didn't get there because he said he wasn't credible right so they didn't they got there they rely on the country conditions on cat but not on withholding and asylums yes that's what I understand this mercy and to be seen the the board never gets to those issues in the asylum because they rely completely on the credibility determination and it could be different theoretically because it's it could be okay well we're well over time on this case and before I let you go and I'd like everybody to hear this too I want it I didn't have the opportunity to thank judge Baldock from the Tenth Circuit for joining us today and we very much appreciate it and appreciate his work and helping out on these cases and all of his thoughtful comments and observations so thank you and this case thank you counsel thank you
judges: Baldock, Wardlaw, Berzon